UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

RORA LLC,

                        Appellant,

             v.

404 EAST 79TH STREET LENDER LLC,

                        Appellee.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-3344 (MKB)

MARGO K. BRODIE, United States District Judge:

Appellant Rora LLC commenced this appeal on July 24, 2020, arising from a bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 *et seq*. (Notice of Appeal, Docket Entry No. 1.) Appellant filed for Chapter 11 bankruptcy on January 21, 2019 (the "Bankruptcy Proceeding"), naming 404 East 79th Street Lender LLC as a mortgage lender with a lien on property located at 404 East 79th Street, New York, New York (the "Property"). (Bankruptcy Ct. Docket 1, Docket Entry No. 1-3; Notice of Bankruptcy R. Received ("R.") 1, Docket Entry No. 5.) On April 26, 2019, Appellee filed a Proof of Claim and an Amended Proof of Claim, asserting a secured indebtedness in the amount of $1,905,038.11 pursuant to an executed note and mortgage on the Property (the "Claim"), (R. 198–200), and on September 18, 2019, Appellant filed an objection to the Claim, seeking an order expunging, reducing and/or subordinating the Claim, which Appellee opposed, (R. 10, 187–94, 229–42). The Bankruptcy Court conducted hearings on the objection on December 16, 2019 and July 7, 2020, (R. 13, 19, 272–301), and on July 21, 2020, the Bankruptcy Court issued a written order

formally overruling Appellant's objection to the Claim (the "Bankruptcy Court Order"), (R. 312). Appellant appeals from the Bankruptcy Court Order and Appellee opposes.[1]

For the reasons set forth below, the Court affirms the Bankruptcy Court Order.

## I. Background

### a. The Note and Mortgage

Appellant is the owner of the Property, which is a commercial condominium unit located at 404 East 79th Street, New York, New York. (R. 71.) On February 9, 2016, Appellant executed and delivered to Brick KV Capital LLC ("Brick Capital") a First Mortgage Note to evidence its obligations to Brick Capital for a loan (the "Loan") in the principal amount of $1,400,000.00 (the "Note"). (R. 71.) As security for the payment of the amount owed under the Note, Appellant granted Brick Capital a lien against the Property pursuant to a First Mortgage and Security Agreement dated February 9, 2016 (the "Mortgage"). (R. 71–101.) The Note and Mortgage were respectively amended by an Amended and Restated First Mortgage Note and Modification and Extension Agreement both dated March 1, 2017. (R. 60–65, 104–09.)

### b. The default and forbearance

By letter dated May 15, 2017, Brick Capital notified Appellant that Appellant had defaulted on the Mortgage due to a "failure to pay the required monthly payments" for March of 2017 and thereafter, demanded full and immediate payment of all outstanding principal and interest due under the Note and the Mortgage, and informed Appellant that it would commence foreclosure proceedings on the Property if Appellant did not render payment. (R. 111–12.) Appellant failed to comply. (R. 111–12.)

---

[1] (Appellant Br., Docket Entry No. 3; Appellant Reply Br. ("Appellant Reply"), Docket Entry No. 8; Appellee Br., Docket Entry No. 6.)

On May 30, 2017, Brick Capital commenced an action in the Supreme Court of the State of New York, County of New York (the "State Court"), seeking to foreclose on the Mortgage (the "Foreclosure Action"). (R. 130.) On December 5, 2017, Brick Capital and Appellant signed a Stipulation of Settlement pursuant to which Brick Capital agreed to forbear from conducting a foreclosure sale of the Property prior to November 1, 2018, so long as Appellant met the terms and conditions set forth in the Stipulation of Settlement (the "Settlement Stipulation"). (R. 116–25.) Under the Settlement Stipulation, Appellant "consent[ed] to the entry of a judgment of foreclosure and sale . . . in the amount of $1,473,050.82 plus interest from November 1, 2017 at the default rate of twenty-four . . . percent per annum through the date [Appellee] receives payment in full of all sums due . . . in conjunction with [the Foreclosure Action]." (R. 119.) Although Appellant consented to being indebted to Appellee in the amount of $1,473,050.82 plus interest, Appellee agreed to accept "$1,200,000.00 in full payment" if Appellant made the payment by November 1, 2018 with "time being of the essence" and "no notice, grace period or right to cure." (R. 119, 122.) Appellant expressly waived "any right to an order of reference [or] referee's computation of amount due." (R. 120.) On May 2, 2018, the State Court issued a Judgment of Foreclosure and Sale (the "Judgment") pursuant to the Settlement Stipulation, which provided for Appellant's payment of $1,473,050.82 plus interest. (R. 129–40.) On November 1, 2018, Appellant failed to make the payment due pursuant to the Settlement Stipulation. (R. 48.)

On December 4, 2018, Brick Capital assigned the Note and Mortgage and all of its right, title, and interest in its cause of action and the Judgment to Appellee. (R. 143–50.) On January 3, 2019, the State Court issued an Order to Show Cause on substituting Appellee as plaintiff in

the Foreclosure Action and amending the Judgment to reflect the change and scheduled a hearing on the motion for January 22, 2019.  (R. 152–53.)

### c.  The Bankruptcy Court Order

On January 21, 2019, Appellant filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.  (R. 1.)  On April 26, 2019, Appellee filed the Claim asserting a secured indebtedness in the amount of $1,905,038.11, which includes the sum of $1,473,050.82 plus interest, under the Note and Mortgage, (R. 198–200, 204), and on September 18, 2019, Appellant filed its objection to the Claim, seeking an order expunging, reducing and/or subordinating the Claim, which Appellee opposed, (R. 10, 187–94, 229–42).  The Bankruptcy Court conducted hearings on the objection on December 16, 2019, (the "December 2019 Hearing") and July 7, 2020, (the "July 2020 Hearing").  (R. 13, 19, 272–301.)  At the December 2019 Hearing, Appellee agreed to reduce the Claim by $132,000, which represented the payments of monthly interest received subsequent to the entry of the Settlement Stipulation.  (R. 284.)

At the July 2020 Hearing, the Bankruptcy Court held, contrary to Appellee's assertion, that the *Rooker-Feldman* doctrine did not bar the claim because Appellant did not contest the Judgment or "ask the [c]ourt to undo or revisit it," (R. 284), and "the steps of the claim objection process" differ from that of the judgment process, (R. 292).  Thus, the Bankruptcy Court "focused on the two issues" and identified them as:

> in substance, what the effect is of a tender of a $1.2 million payment in December . . . on the amount due.  Did it cause the amount due to be [$]1.2 million as opposed to the number in the [Judgment]?  Did it cause interest no longer to run because of the authority that has been cited to the [c]ourt, among others [*In re Avaya, Inc.*, No. 17-BR-10089, 2019 WL 1858847 (Bankr. S.D.N.Y. Apr. 22, 2019)]?

(R. 280–81.)

As to the first issue, Appellant argued that on December 21, 2018, it tendered to Appellee a payment of $1,200,000, which Appellee refused.  (R. 285–86.)  The Bankruptcy Court opined that:

> [T]he opportunity to pay . . . the debt in full with the [reduced] payment of [$]1.2 million was there under stipulation, but the payment had to be made by November 1st, and it wasn't.  The tender was not offered until December.  The date had passed.  There was no agreement. . . . . brought to the [c]ourt's attention or argued to extend.  And so[,] the payment of the amount that was agreed to in the forbearance is no longer a payment that is available to the [Appellant] in full satisfaction of the amount owed.  [Appellant] doesn't dispute that it didn't pay or offer to pay on November 1st.  And, again, [Appellant] does not contest, nor could it, the [Judgment].  [Appellant] is straightforward about that.  So[,] [Appellant's] . . . objection to the claim on grounds that it owes only [$]1.2 million pursuant to the [Settlement] [S]tipulation . . . is overruled.

(R. 288–89.)  As to the second issue, the Bankruptcy Court concluded that:

> A defendant's unconditional tender of the judgment amount . . . will stop the running of post judgment interest pursuant to CPLR 5003. . . . But, here, what we have fell short of an unconditional tender of the judgment amount.  It would be a different result, very likely, if the amount had been tendered on November 1st.  And . . . it would be a closer question if the amount had been tendered first thing in the morning on November 2nd.  Probably the same result, but perhaps a closer question.  But by December 18th, . . . the passage of time made that an incomplete offer, and an incomplete offer does not have the effect that [Appellant] seeks in invoking the concept of equitable defenses under New York law.  So[,] to the extent [Appellant] has objected to the claim on those grounds, that objection is overruled as well.

(R. 291–92.)  Appellant's counsel noted that "the only remaining question for the purposes of [the] hearing is . . . the amount of the claim" and stated that the matter could be resolved with Appellee's counsel.  (R. 299.)

On July 21, 2020, the Bankruptcy Court issued the Bankruptcy Court Order overruling the objection, (R. 312), which Appellant appeals, (Appellant Br.; Appellant Reply), and Appellee argues should be affirmed, (Appellee Br.).

## II. Discussion

### a. Standard of review

District courts have appellate jurisdiction over "final judgments, orders, and decrees" entered in bankruptcy court.  28 U.S.C. § 158(a).  An order declining to expunge, reduce and/or subordinating a claim is a final, appealable order.  *See In re Lehman Bros. Holdings Inc.*, 548 B.R. 663, 668 (S.D.N.Y. 2016) (reviewing bankruptcy ruling on subordination claims), *aff'd on other grounds*, 855 F.3d 459 (2d Cir. 2017); *In re Residential Cap., LLC*, No. 12-12020, 2016 WL 4082712, at *1 (S.D.N.Y. July 28, 2016) (reviewing bankruptcy order sustaining objection to proof of claim); *In re Gen. Mar. Corp.*, No. 13-CV-5019, 2014 WL 5089406, at *2 (S.D.N.Y. Sept. 29, 2014) (reviewing bankruptcy order and concluding that the bankruptcy court properly subordinated and expunged the appellant's claim).

On appeal, a district court reviews the legal conclusions of a bankruptcy court *de novo* and its factual findings for clear error.  *See In re Pinnock*, 833 F. App'x 498, 501 (2d Cir. 2020) (engaging in *de novo* review of the district court's review of a bankruptcy court decision and noting that the Second Circuit "appl[ies] the same standard of review employed by the district court to the decision of the bankruptcy court" (quoting *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 387 (2d Cir. 2018))).  "A finding is 'clearly erroneous' when, on consideration of the record as a whole, the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'"  *Glassman v. Feldman*, No. 19-CV-5002, 2020 WL 6119270, at *4 (E.D.N.Y. Oct. 16, 2020) (quoting *Bongiovanni v. Grubin*, No. 15-CV-2617,

2016 WL 4059349, at *3 (E.D.N.Y. July 28, 2016)). The district court need not limit its review to the arguments raised or relied upon in the decision below but may affirm on any ground that finds support in the record. *See Wenegieme v. Macco*, No. 17-CV-1218, 2018 WL 334032, at *2 (E.D.N.Y. Jan. 9, 2018).

### b. Subject matter jurisdiction

Appellee argues that the Court lacks subject matter jurisdiction due to the *Rooker-Feldman* and *res judicata* doctrines. (Appellee Br. 20.)

Appellant asserts that the Bankruptcy Court correctly concluded that neither *Rooker-Feldman* nor *res judicata* bars consideration of the Claim. (Appellant Reply 5.)

### i. *Rooker-Feldman*

Appellee argues that the "*Rooker-Feldman* doctrine should have barred [Appellant's objection]" over the claims because Appellant's claim "is based on the Judgment rendered in the State Court [a]ction." (Appellee Br. 21–22 (first citing *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415–16 (1923); and then citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)).) In support, Appellee argues that Appellant (1) disputed "the amount of damages awarded to the mortgagee" in the State Court action, (2) requested that the Bankruptcy Court overturn the Judgment, (3) filed the instant "motion long after the entry of the Judgment," and (4) sued the same party "involved in the State Court [action]." (*Id.* at 22.)

Appellant argues that the *Rooker-Feldman* doctrine does not apply because it does not contest the Judgment but merely asserts that "it owed Appellee a lesser amount than what is reflected in the Judgment because: (a) pursuant to the terms of the subsequently signed Settlement Stipulation, Appellant only owed Appellee the sum of $1,200,000; or [in the]

alternative[] (b) the existence of post-judgment equitable defenses in favor of Appellant precluded Appellee from recovering the full amount of the Judgment."  (Appellant Br. 6.)

In *Rooker*, 263 U.S. at 415–16, and *Feldman*, 460 U.S. at 486–87, the Supreme Court held that federal district courts lack subject matter jurisdiction over disputes where a plaintiff essentially seeks review of a state-court decision.  *Feldman*, 460 U.S. at 482 ("[A] United States [d]istrict [c]ourt has no authority to review final judgments of a state court in judicial proceedings."); *Rooker*, 263 U.S. at 416 (holding that "no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify [a state court's] judgment for errors"); *see also Exxon Mobil Corp.*, 544 U.S. at 283–84 (holding that *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." (citing *Exxon Mobil Corp.*, 544 U.S. at 284)).  "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions."  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Vossbrinck*, 773 F.3d at 426 ("The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in the Supreme Court.'" (quoting *Exxon Mobil Corp.*, 544 U.S. at 283)).

In order for the *Rooker-Feldman* doctrine to apply, the following four-part test must be satisfied: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by a state[-]court judgment'; (3) the plaintiff 'invites review and rejection of that

8

judgment'; and (4) the state judgment was 'rendered before the district court proceedings commenced.'" *Vossbrinck*, 773 F.3d at 426 (alterations omitted) (quoting *Hoblock*, 422 F.3d at 85); *see also Powell v. Ocwen Loan Servicing, LLC*, No. 19-CV-2735, 840 F. App'x 610, 612 (2d Cir. 2020) (affirming that review was barred pursuant to the *Rooker-Feldman* doctrine because "correcting [the] loan balance as found by the state court" in its foreclosure judgment would invite rejection of the state court's judgment); *Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 609 (2d Cir. 2020) (outlining the *Rooker-Feldman* test); *In re Holmes*, No. 19-23497, 2020 WL 4279576, at *4 (Bankr. S.D.N.Y. July 24, 2020) ("Courts in this [c]ircuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." (quoting *In re Moise*, 575 B.R. 191, 202 (Bankr. E.D.N.Y. 2017))); *In re Allard*, No. 18-14092, 2019 WL 4593854, at *3 n.2 (Bankr. S.D.N.Y. Sept. 20, 2019) (noting that a debtor "tried unsuccessfully several times to get th[e] [district court] . . . to modify the state court foreclosure judgment, reducing the interest award[,] . . . [b]ut the *Rooker-Feldman* doctrine does not permit th[e] [c]ourt to do so").

The Court finds that while Appellee clearly satisfies two out of the four elements of the *Rooker-Feldman* test — Appellant lost in state court and commenced this action after the Judgment in State Court — it is unclear whether Appellee satisfies the second and third elements, that Appellant's injuries are caused by the Judgment and that Appellant seeks to question or set aside the Judgment.

As to the first element, Appellant entered into a Settlement Stipulation consenting to a Judgment and therefore lost in State Court, and did not appeal in State Court. *See Conrad v. U.S. Bank Nat'l Ass'n*, No. 19-CV-1720, 2020 WL 5258970, at *4 (D. Conn. Sept. 3, 2020) (concluding that the appellants lost in state court where "the state court entered a stipulated

judgment of foreclosure by sale" and denied the appellants' motion to reopen the judgment); *In re Williams*, No. 18-44707, 2020 WL 3412775, at *26 (Bankr. E.D.N.Y. June 18, 2020) (concluding that the plaintiff "lost in state court when that court entered the judgment of foreclosure in the [f]oreclosure [a]ction" and "efforts to overturn that judgment were unsuccessful"); *Markham v. Bezinque*, No. 19-CV-6930, 2020 WL 3316104, at *4 (W.D.N.Y. June 18, 2020) (concluding that the plaintiff lost in state court when the court issued a judgment against him, "even though it was the product of a stipulation" (citing *Wittich v. Wittich*, No. 06-CV-1635, 2006 WL 3437407, at *3 (E.D.N.Y. Nov. 29, 2006))); *Encarnacion v. RMS Asset Mgmt. LLC*, No. 17-CV-5299, 2018 WL 4572240, at *3 (S.D.N.Y. Sept. 24, 2018) (concluding that the plaintiff lost in housing court where she signed a settlement stipulation, which the state court declined to vacate); *Thompson v. Donovan*, No. 13-CV-2988, 2014 WL 5149037, at *11 (S.D.N.Y. Oct. 14, 2014) (concluding that a stipulation of settlement between landlord and tenant was a final judgment); *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009) ("[F]or purposes of *Rooker–Feldman*, because plaintiffs now seek to effectively set aside the judgment authorizing the warrant of eviction, based upon the stipulation of settlement, on the basis that such violated plaintiffs' rights, the [c]ourt deems plaintiffs a losing party in a state court action for purposes of this procedural requirement of *Rooker–Feldman*.").

Appellant filed this action on July 24, 2020, approximately two years after the Judgment had been filed and entered by the County Clerk's office, satisfying the fourth element. (*See* R. 129–40); *In re Williams*, 2020 WL 3412775, at *27 (noting a year-long gap between a state court foreclosure judgment and bankruptcy proceeding and concluding that the fourth element of the *Rooker-Feldman* test was established).

In addition, it appears that Appellant's injuries stem directly from the Judgment and that the appeal invites review of the Judgment. Appellant asserts that "Appellee was owed the sum of $1,200,000 (plus accrued interest through December 21, 2018, the date of the tender)" rather than the sum of $1,473,050.82 with interest noted in the Judgment, (Appellee Br. 7), and also argues that the Settlement Stipulation "should have been more clearly drafted but it is consistent with [Appellant's] belief that the balance owed . . . never exceeded $1,200,000 upon Appellant's having paid $385,050.85 upon signing the Settlement Stipulation, default or no default," (*id.* at 9). Although the Settlement Stipulation references the sums of $1,473,050.82 and $1,200,000, (R. 119, 122), the Judgment, which was entered pursuant to the Settlement Stipulation, only references the sum of $1,473,050.82 as the amount of the judgment. (R. 129–40.) Appellant seeks to have the Court find that the "balance owed . . . never exceeded $1,200,000," (Appellee Br. 9), and such a ruling arguably would require the Court to set aside the Judgment amount. Given that the Judgment was entered on May 2, 2018 in the sum of $1,473,050.82, and the Settlement Stipulation noted that the due date to tender payment of $1,200,000 was November 1, 2018, (R. 119, 122, 129–40), the Court understands Appellant to challenge as inaccurate the amount owed stated in the Judgment and such a review appears to be barred by the *Rooker Feldman* doctrine. *See Powell*, 2020 WL 7688338, at *2 (concluding that review would challenge the state court judgment where the appellants argued "that they [we]re not seeking redress for injuries caused by the state court judgment, but instead [we]re seeking relief from problems they did not bring to the state court's attention" regarding "clarify[ing] certain terms of the loan modification").

However, because Appellant seeks clarity about the amount owed, arguing that one, rather than the other amount stated in the Settlement Stipulation correctly states the amount owed

and because the Settlement Stipulation, pursuant to which the Judgment was entered, states two amounts and the Judgment was entered prior to the deadline for either amount, arguably, Appellant does not seek to set aside the Judgment but to correct the amount owed based on the Settlement Stipulation, in effect, seeking to correct an error. (R. 119, 122, 129–40.)

Although it appears that under *Powell*, the *Rooker-Feldman* doctrine precludes Appellant's application, because, as discussed below, the Court finds that additional sanctions are unwarranted, the Court assumes without deciding that Appellant sufficiently alleges the Court's jurisdiction and decides the merits of the appeal.

### ii. *Res judicata*

Appellee argues in the alternative that "when the State Court granted the Judgment against [Appellant, Appellant's] objection to the amount of damages awarded in said Judgment, as asserted in the present motion, became barred by *res judicata*." (Appellee Br. 22.)

Appellant argues that its claims are not barred by *res judicata* because "[n]either [the] claim to enforce the terms of the Settlement Stipulation nor any equitable defenses arising after the entry of the Judgment" were decided by the State Court. (Appellant Reply 7.)

"The federal courts generally have . . . consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). "Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in [the previous] action . . . .'" *Proctor v. LeClaire*, 715 F.3d 402, 411 (2d Cir. 2013) (first alteration in original) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)); *see also Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017). A court can take judicial notice of state court decisions on a motion to dismiss pursuant to Rule 12 of the Federal Rules of

Civil Procedure. *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006))); *see also Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 22 (2d Cir. 2016) (affirming a district court's decision granting a defendant's motion to dismiss where the district court found that the plaintiff's action was precluded by a prior state court foreclosure action).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so . . . ." *Allen*, 449 U.S. at 96. To prove claim preclusion under New York law, an appellee must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)). New York law states that "an issue is not actually litigated if it was settled by stipulation." *Singh v. N.Y.S. Div. of Human Rights*, 132 N.Y.S.3d 42, 44 (App. Div. 2020); *see also Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner*, 897 N.Y.S.2d 729, 732 (App. Div. 2010) (noting that a stipulation of discontinuance with prejudice is subject to *res judicata*).

Appellee fails to satisfy the elements of *res judicata* because the State Court action was never actually litigated as it was settled by the Settlement Stipulation and was therefore not an adjudication on the merits. *See Jarry v. Nat'l Collegiate Student Loan Tr. 2005-03*, No. 18-CV-315, 2019 WL 3326165 (E.D.N.Y. April 23, 2019) (noting that a settlement stipulation did not

constitute a final judgement on the merits of the matters at issue in a state court action for purposes of *res judicata* because the stipulation did not result in the dismissal of that action with prejudice); *Singh*, 132 N.Y.S.3d at 44 ("[T]he holdover proceeding was settled by stipulation, and therefore 'the doctrine of collateral estoppel is not applicable since the issues resolved by the stipulation of settlement were never actually litigated.'" (quoting *Pawling Lake Prop. Owners Ass'n, Inc.*, 897 N.Y.S.2d at 732)); *Douglas Elliman, LLC v. Silver*, 39 N.Y.S.3d 51, 54 (App. Div. 2016) (concluding that *res judicata* did not apply where a stipulation was entered and the issues were not actually litigated). In addition, the Settlement Stipulation was entered *without* prejudice to foreclosure, which further demonstrates that it was not an adjudication on the merits. (R. 119, 140); *see Arias v. Hanocka*, No. 18-CV-10648, 2020 WL 7261108, at *2 (S.D.N.Y. Dec. 10, 2020) (noting that a stipulation of dismissal *with* prejudice is an adjudication on the merits and subject to *res judicata*).

Accordingly, because claim preclusion only applies to issues "actually litigated and decided in the previous proceeding" and the Settlement Stipulation was entered without prejudice and never actually litigated, the Judgment is not barred by *res judicata*. *Ninety-Five Madison Co., L.P. v. Vitra Int'l AG*, 837 F. App'x 823, 825 (2d Cir. 2020) (noting that claim preclusion applies when an "issue was actually litigated" (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011))).

### c. Merits of bankruptcy appeal

Appellant argues that "the Bankruptcy Court committed reversible error in entering the [Bankruptcy Court] Order." (Appellant Br. 13.)

Appellee argues that "the Bankruptcy Court did not err in overruling [Appellant's] objection." (Appellee Br. 14.)

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim — *i.e.*, a document providing proof of a 'right to payment' — against the debtor's estate." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) (quoting 11 U.S.C. § 101(5)(A)). "A proof of claim executed and filed in accordance with [section 502(a) of the Bankruptcy Code] shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); 11 U.S.C. § 502(a); *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 22 n.2 (2000); *Hoos & Co. v. Dynamics Corp. of Am.*, 570 F.2d 433, 436 (2d Cir. 1978); *In re Live Primary, LLC*, 626 B.R. 171, 188 (Bankr. S.D.N.Y. 2021). "That presumption may be challenged by producing evidence calling the validity of the proof of claim into question." *In re Rogers*, No. 18-BR-20833, 2021 WL 112477, at *9 (Bankr. D. Conn. Jan. 5, 2021); *see also In re Fuigo LLC*, No. 19-BR-12662, 2020 WL 4341765, at *2 (Bankr. S.D.N.Y. July 28, 2020) ("To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." (quoting *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000))). Thus, "[a] claim or interest, proof of which is filed under section 501. . . is deemed allowed, unless a party in interest . . . objects." *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 449 (alterations in original) (quoting 11 U.S.C. § 502(a)).

When a party objects to a proof of claim, the court:

> after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that — (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1); *In re Ditech Holding Corp., et al.*, No. 19-BR-10412, 2021 WL 219529, at *4–5 (Bankr. S.D.N.Y. Jan. 20, 2021) (quoting 11 U.S.C. § 502(a)). "[A]s soon as [a party that files an objection] introduce[s] any substantial evidence in opposition[,] the claimants need[] to establish by a preponderance of all the evidence that the claims as filed were based on facts which entitled the claimants to their allowance under the law." *In re George R. Burrows, Inc.*, 156 F.2d 640, 641 (2d Cir. 1946) (citing *Whitney v. Dresser*, 200 U.S. 532, 534 (1906)); *see also In re Ditech Holding Corp.*, 2021 WL 219529, at *4–5 ("In the face of a properly filed claims objection, the claimant must prove by a preponderance of the evidence that under applicable law[,] the claim should be allowed." (citing *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the *prima facie* validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim."))); *In re Rogers*, 2021 WL 112477, at *9 ("In the event that a proof of claim's validity is challenged, it is incumbent on the creditor to substantiate its claim by producing supporting evidence.").

Appellant challenges the Bankruptcy Court's Order by asserting arguments based on (1) improper procedure, (2) lack of an evidentiary hearing, and (3) inaccurate interpretation of the Settlement Stipulation. The Court addresses each argument in turn and analyzes whether Appellee met its burden of demonstrating the validity of the Claim.[2]

---

[2] There is no dispute that the proof of claim constitutes *prima facie* evidence of the validity and amount of the Claim and that Appellant's objection rebutted the *prima facie* validity of the Claim. *See In re Brown*, 615 B.R. 725, 739 (Bankr. S.D.N.Y. 2020) ("There is no dispute that the filed claim constitutes *prima facie* evidence of the validity of the contingent claim. Accordingly, . . . the [c]ourt must determine whether the [d]ebtor has rebutted the presumption of the *prima facie* validity of that claim and, if so, whether [the creditor] has met her burden of demonstrating the validity of the [claim].").

### i.   Procedural objection to the validity of the claim

Appellant asserts that Appellee did not meet its evidentiary burden to demonstrate the validity of the Claim because Brick Capital and Appellee failed "to file any affidavit in response to the Claim [o]bjection" and the Claim should have been disallowed on this basis alone. (Appellant Br. 14.)

Appellee argues that Appellant's arguments fail because (1) the Claim "included a rider laying out the factual predicates for [the] Claim as set forth in the loan documents (and [Appellant's] breach of same), the Settlement Stipulation (and [Appellant's] breach of same) and the Judgment," (2) the "[t]he rider also specifically cites to the documents themselves, which . . . were already filed on the [Bankruptcy] Court's docket on March 20, 2019 as exhibits," (3) the opposition to the objection "specifically cit[ed] to the [Declaration of Abraham Kassin dated March 19, 2019 ('Kassin Declaration')] and the loan documents, assignment documents, [Settlement] Stipulation[,] and Judgment," and (4) "the Bankruptcy Court specifically referred to and relied on the Kassin Declaration and the exhibits thereto" in its decision.  (Appellee Br. 16.)

On April 26, 2019, Appellee filed the Claim with supporting documents, (R. 3 (attaching over fourteen exhibits), 25–38, 198–200), and on September 18, 2019, Appellant filed its objection to the Claim, (R. 10, 187–94, 229–42).  In response to the objection, Appellee referred to documentation that it included with the Claim when it was filed and the Bankruptcy Court referred to those documents in support of its decision.  (R. 256–60.)  Appellant does not cite any case in support of its assertion that the Bankruptcy Court should have disallowed the Claim based on Appellee's failure to file a new affidavit in response to the objection or that a creditor cannot meet the burden of proof by relying on documents attached to a claim, and the Court finds none.  (Appellant Br. 14); *see In re Brown*, 615 B.R. 725, 739 (Bankr. S.D.N.Y. Mar. 13 2020)

("[T]he ultimate burden of persuasion is always on the claimant. Thus, it may be said that the proof of claim is some evidence as to its validity and amount. It is strong enough to carry over a mere formal objection without more." (quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991))); *see also In re Fuigo LLC*, No. 19-12662, 2020 WL 4341765, at *3 (Bankr. S.D.N.Y. July 28, 2020) ("After the [d]ebtor objected to the [claim] with a *bona fide* legal argument, the burden shifted back to [the creditor] to offer evidence supporting the validity of their claim. By failing to *respond* to the [o]bjection, [the creditor] did not meet its burden to prove that the [claim] should be allowed." (emphasis added) (citing *Sherman*, 245 B.R. at 773)).

Accordingly, the Court rejects Appellant's procedural argument in opposition to the Bankruptcy Court's Order.

### ii. Challenge to the lack of evidentiary hearing

Appellant states that the Bankruptcy Court should have "conven[ed] an evidentiary hearing on its own" because there are disputed facts. (Appellant Reply 3 n.3.) In support, Appellant asserts that "[t]o the extent that there was any imprecision in the meanings" of the paragraphs in the Settlement Stipulation which "authorized the payments subsequently made on the signing of the Settlement Stipulation" and "itemized payment to be made on the signing of the Settlement Stipulation, . . . the Bankruptcy Court should have scheduled an evidentiary hearing and taken testimony." (Appellant Br. 16.)

Appellee argues that the Court should decline to review the issue of an evidentiary hearing as Appellant's "submissions to the Bankruptcy Court did not seek an evidentiary hearing [a]nd[] at no time since the filing of its bankruptcy petition has [Appellant] sought any discovery in connection with its [o]bjection (or anything else in the case)." (Appellee Br. 17 (quoting *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008)).) Appellee further argues

that the language in the Settlement Stipulation is clear and unambiguous and that an evidentiary hearing is unnecessary because Appellant "failed to make the payment due under the Settlement Stipulation on [the] November 1, 2018 [deadline] and, therefore, it was bound by the terms of the Judgment." (*Id.*)

Where an evidentiary hearing is not required and the appealing party fails to request an evidentiary hearing, the appealing party cannot "be heard to complain about the lack of an evidentiary hearing." *Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 949 (B.A.P. 2d Cir. 1998); *see also In re Great Atl. & Pac. Tea Co., Inc.*, 618 B.R. 57, 66 (S.D.N.Y. 2020) ("[The] lack of an evidentiary hearing does not constitute a ground for error where . . . an evidentiary hearing is not required and the appealing party did not request one." (citing *Froman v. Fein (In re Froman)*, 566 B.R. 641, 651 (S.D.N.Y. 2017) (finding no error for lack of evidentiary hearing where the party had opportunity to contest conversion motion but never requested separate evidentiary hearing))); *see also Bernheim v. Damon & Morey, LLP*, No. 06-BK-3386, 2007 WL 1858292, at *2 (2d Cir. June 28, 2007) (summary order) (noting that because "[b]ankruptcy judges enjoy broad discretion as to the type of hearing to conduct," the bankruptcy court did not abuse discretion by failing to conduct evidentiary hearing where debtor had "more than ample opportunity to present its arguments" through written submissions); *Wilmington Tr. Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 479 (S.D.N.Y. 2013) ("[W]here the parties do not request an evidentiary hearing or the core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record." (quoting *In re Gonzalez–Ruiz*, 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006))). "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *In re Blaise*, 219 B.R. at 949.

An evidentiary hearing was not required in the Bankruptcy Court proceeding as "the record permit[ed] the [B]ankruptcy [C]ourt to 'draw the necessary inferences.'" *In re Lynch*, 795 F. App'x 57, 59 (2d Cir. 2020) (quoting *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1312–13 (2d Cir. 1994)). Contrary to Appellant's assertion, the record shows that the Settlement Stipulation is clear and unambiguous. As explained below, the Settlement Stipulation required Appellant to tender the sum of $1,200,000 on or before November 1, 2018, and Appellant's failure to make timely payment meant that Appellant was obligated to pay the sum of $1,473,050.82 plus interest as noted by the terms of the Judgment. (R. 116–25, 129–40.) Thus, an evidentiary hearing was not required to determine these undisputed facts. *See Jian Wang v. IBM*, 634 F. App'x 326, 327 (2d Cir. 2016) (noting that "no evidentiary hearing was necessary to sort out the terms of the agreement," which were unambiguous); *Juan F. ex rel Lynch v. Rowland*, No. 89-CV-859, 2000 WL 33119474, at *3 (D. Conn. Dec. 22, 2000) (holding that an evidentiary hearing was not required where the agreement was unambiguous); *Wilder v. Bernstein*, 153 F.R.D. 524, 527 n.3 (S.D.N.Y. 1994) ("Since the [c]ourt finds the [stipulation] to be unambiguous in its terms, no evidentiary hearing is necessary."); *In re Royster Co.*, 132 B.R. 684, 689 (Bankr. S.D.N.Y. 1991) (holding that an evidentiary hearing was not required where the terms of a stipulation were clear and unambiguous); *Cummins v. Lune*, 56 N.Y.S.3d 631, 634 (App. Div. 2017) (holding that "an evidentiary hearing [was] unnecessary regarding the parties' intent inasmuch as their intent is clear from within the four corners of the agreement"); *Graham v. Corona Grp. Home*, 754 N.Y.S.2d 362, 364 (App. Div. 2003) (concluding that "an evidentiary hearing was [not] required to resolve alleged ambiguities in the agreement, or claimed issues of fact" because the agreement "was unambiguous in its terms").

Moreover, Appellant never requested an evidentiary hearing before the Bankruptcy Court. (*See* R.) At the July 2020 Hearing, the Bankruptcy Court asked, "Is there anything remaining to the claim objection that [Appellant is] asking the [c]ourt to rule on?" and Appellant responded that the "only remaining question for the purposes of th[e] hearing is just the amount of the [C]laim," which can be resolved with Appellee. (R. 298–99.) Because Appellant never requested an evidentiary hearing, it is precluded from raising the issue of an evidentiary hearing on appeal. *See In re Froman*, 566 B.R. 641, 652 (S.D.N.Y. 2017) (noting that the debtor did not request an evidentiary hearing when the court asked whether "she had anything to add before the rulings on the motions" and that debtor cannot complain about the lack thereof for the first time on appeal); *Powers v. Am. Honda Fin. Corp.*, 216 B.R. 95, 97 (N.D.N.Y. 1997) (concluding that an evidentiary hearing on a lift-stay motion was not required where the party did not request one, and where the party had an opportunity to contest at oral argument).

Accordingly, the Court finds that the lack of an evidentiary hearing does not constitute error. *See In re Blaise*, 219 B.R. at 949.

### iii. The Settlement Stipulation and interest accrued

Appellee argues that Appellant "is bound by the literal terms of the Settlement Stipulation and the Judgment and, therefore, [Appellant] is entitled to interest." (Appellee Br. 18.)

Appellant argues that the Bankruptcy Court erred in its ruling because "at a minimum, Appellee's rejection of Appellant's tender should have resulted in the denial of interest accruing from and after the date of such tender." (Appellant Br. 16.)

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005)); *see also Lenington v. Kachkar*, 633 F. App'x

59, 60 (2d Cir. 2016) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law." (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999))); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 136 (2d Cir. 2011) ("[T]he starting point for interpreting settlement agreements is general contract-law principles." (citing *Omega Eng'g, Inc.*, 432 F.3d at 443)); *Rispler v. Spitz*, 377 F. App'x 111, 112 (2d Cir. 2010) ("A settlement agreement is a contract which is 'binding and conclusive,' and is interpreted according to general principles of contract law." (first quoting *Powell*, 497 F.3d at 128; and then citing *Red Ball Interior Demolition Corp.*, 173 F.3d at 484)). "[I]f the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 594 F. App'x 700, 702 (2d Cir. 2014) (alterations omitted) (quoting *Alexander & Alexander Servs., Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998)); *see also Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." (citing *South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005))).

Further, "[s]ettlement agreements to end litigation are strongly favored by courts and are not lightly cast aside" — once reached, they are "binding and enforceable." *Collick v. United States*, 552 F. Supp. 2d 349, 352 (E.D.N.Y. 2008); *see also Willgerodt ex rel. Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside." (first citing *Rivera v. State*, 496 N.Y.S.2d 230, 231 (App. Div. 1985); and then citing *Galasso v. Galasso (In re Galasso)*, 35 N.Y.2d 319, 321 (1974))). "When a party makes a deliberate, strategic choice to

settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." *Powell*, 497 F.3d at 128 (citing *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994)).

### 1.  Full satisfaction

Appellant states that when it tendered payment of $1,200,000 on December 21, 2018, Appellee was obligated to accept the amount in full satisfaction of the Judgment.  (Appellant Br. 17.)  Appellant asserts that the Settlement Stipulation "should have been more clearly drafted but it is consistent with [Appellant's] belief that the balance owed . . . never exceeded $1,200,000." (*Id.* at 9.)

Appellee argues that "the Settlement Stipulation is clear and unambiguous" that for Appellant "to receive the discounted payoff benefits of said agreement, [Appellant] was required to make the balloon payment of [$1,200,000] by no later than November 1, 2018," and that when Appellant failed to make payment by the deadline, a foreclosure action was appropriate by the terms of the Judgment.  (Appellee Br. 18.)

A contract provision is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin*, 639 F.3d at 69 (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)); *see also Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("No ambiguity exists where the contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'" (alteration omitted) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989))).  By contrast, "[a] contract is ambiguous when its terms could suggest 'more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Utica*, 594 F. App'x at 703 (quoting *Lightfood v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)); *see also Lockheed Martin*, 639 F.3d at 69 ("[T]he language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." (citing *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138–39 (2d Cir. 2000))). In determining whether a contract provision is unambiguous, a court must consider the contract as a whole. *See Lockheed Martin*, 639 F.3d at 69. If the contract as a whole "makes clear the parties' over-all intention," the court examining a specific provision must give that provision the construction which will carry out the parties' intent. *Id.* (quoting *Kass v. Kass*, 91 N.Y.2d 554, 567 (1998)).

The language contained in the Settlement Stipulation is unambiguous — it has a "precise meaning, as to which there is no reasonable basis for a difference in opinion." *Lockheed Martin*, 639 F.3d at 69. The Settlement Stipulation states that (1) Appellant "acknowledge[s] that [it is] indebted to [Appellee] under the [l]oan [d]ocuments as a result of their prior defaults" in the amount of $1,473,050.82 due as of November 1, 2017, (2) Appellant "consent[s] to the entry of [Judgment]. . . in the amount of $1,473,050.82 plus interest from November 1, 2017 at the default rate of twenty-four . . . percent per annum through the date [Appellee] receives payment in full of all sums due . . . in conjunction with this action," (3) Appellee agrees to accept "$1,200,000 in full payment" if Appellant made the payment by November 1, 2018 with "time being of the essence" and "no notice, grace period or right to cure," and (4) Appellee agrees to

"not conduct a foreclosure sale prior to November 1, 2018," unless Appellant defaults under the Settlement Stipulation and is provided a ten-day notice to cure.[3]  (R. 118–19, 122.)

Because the Settlement Stipulation stated that there was "no notice, grace period or right to cure" if Appellant did not tender $1,200,000 by November 1, 2018, and Appellant failed to tender payment on that date, the entry of Judgment in the amount of "$1,473,050.82 plus interest from November 1, 2017 at the default rate of twenty-four . . . percent per annum through the date [Appellee] receives payment in full of all sums due" is appropriate.  (R. 118–19, 122); *see Rochester Laborers' Pension, Welfare-S.U.B., Annuity & Apprentice & Training Funds v. Massa Constr.*, No. 07-CV-6171, 2013 WL 1681777, at *2, 6 (W.D.N.Y. Apr. 17, 2013) (concluding that the defendants had defaulted under a settlement agreement and granting entry of judgment in the sum of $36,563.01 against the defendants where pursuant to a stipulation, the defendants agreed to pay the plaintiffs $9,000 in settlement of a debt and agreed that the plaintiffs were entitled to the much higher amount if the defendants "failed to make the required payments in accordance with the [s]tipulation"); *Transtech Elecs. Pte Ltd. v. Nas Elecs.*, No. 98-CV-1209, 2000 WL 381428, at *2 (S.D.N.Y. Apr. 13, 2000) (concluding that the terms of a settlement agreement were unambiguous and that the plaintiffs were "entitled to an entry of judgment against the defendants in accordance with the plain language of the agreement" where the "agreement provides for judgment to be entered against the defendants should one of two events occur: the failure to make timely payment, or the failure to assign the patent rights" and it was undisputed that the events occurred); *Corona Fuel Corp. v. Nayci*, 35 N.Y.S.3d 171, 173 (App.

---

[3]  Appellant argues that "Appellee . . . never provided any ten days' notice to cure which is a necessary prerequisite to the commencement of a foreclosure action."  (Appellant Br. 16 n.15.)  Because such notice was only required if a foreclosure sale was conducted *prior to* November 1, 2018, (R. 118–19, 122), and Appellee did not conduct a foreclosure sale prior to that date, the Court finds that Appellant's notice argument lacks merit.

Div. 2016) (noting that "it is undisputed that the defendants did not comply with the terms of the stipulation of settlement, since they did not tender the first installment payment due under the agreement [which was settled for $70,000], and did not cure within [twenty] days after being served with the notice of default" and concluding that pursuant to "the terms of the stipulation of settlement [which was negotiated on the parties' behalf by counsel] . . . the plaintiff 'may enter judgment'" in the sum of $113,121.96); *Bynum v. Scheiner*, 823 N.Y.S.2d 484, 485 (App. Div. 2006) (affirming judgment of $24,000 where the parties entered a stipulation that provided that if timely payments totaling $10,000 was not made, judgment would be entered in the sum of $24,000 and the defendant failed to make timely payments); *Zarsky v. Law Off. of Maury B. Josephson*, 831 N.Y.S.2d 363, 363 (Civ. Ct. 2006) (concluding that since the defendants did not timely pay plaintiff $5,800 pursuant to the terms of a stipulation of settlement, the plaintiff could enter judgment for the amount of $9,500 less any payments made).

The Court, therefore, interprets the Settlement Stipulation to effectuate its unambiguous language.

## 2. Refusal to accept tender

Appellant argues that because Appellee did not accept the tender of $1,200,000 when Appellant provided it on December 21, 2018, Appellee cannot recover interest accrued after December 18, 2018.  (Appellant Br. 17.)

Appellee asserts that "because [Appellant] did not make an unconditional tender of the Judgment amount" in the sum of $1,473,050.82 plus interest but provided "only the reduced amount which [Appellee] was no longer obliged to accept" on December 21, 2018, Appellee is entitled to interest accruing from or after that date.  (Appellee Br. 19.)

"Under New York law, the refusal of an unconditional tender of money stops the running of interest based on principles of estoppel." *In re Avaya, Inc.*, 608 B.R. 366, 372 (Bankr. S.D.N.Y. 2019) (quoting *Koch v. Greenberg*, 14 F. Supp. 3d 247, 285 (S.D.N.Y. 2014), *aff'd*, 626 F. App'x 335 (2d Cir. 2015)), *reconsideration granted*, No. 17-10089, 2020 WL 697203 (Bankr. S.D.N.Y. Feb. 10, 2020); *see also Gamman v. Silverman*, 24 N.Y.S.3d 347, 349 (App. Div. 2016) (affirming the lower court's denial of the defendant's motion to stop the running of interest where the tender that the defendant made was not unconditional). An unconditional tender is payment "of the full amount due." *Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. 10-CV-4677, 2018 WL 4692353, at *5 (E.D.N.Y. Aug. 31, 2018) (quoting *Firestorm Partners 2, LLC v. Vassel*, 2013 WL 654396, *7 (E.D.N.Y. Feb. 21, 2013)), *report and recommendation adopted*, 2018 WL 4771899 (E.D.N.Y. Sept. 30, 2018).

Failure to tender timely payments or cure within the window provided in a stipulation of settlement is a default and where a stipulation is clear, "literal enforcement of its terms is not unjust." *See Cadlerock Joint Venture, L.P. v. Rubenstein*, 812 N.Y.S.2d 469, 470–71 (App. Div. 2006). In *Cadlerock Joint Venture, L.P.*, the plaintiff commenced an action to obtain the balance due on a note. *Id.* The parties, "who were represented by counsel, entered into a stipulation of settlement pursuant to which plaintiff agreed to accept, in lieu of the $54,779.32 it originally sought, the lesser sum of $27,500." *Id.* The stipulation provided that the lesser sum was to be paid in two installments on certain dates and that "[i]n the event that [the defendants] fail to make full and timely payment . . . and fail upon seven days written notice to cure any default, [the defendants] consent to the entry of a [j]udgment . . . in the sum of $56,774.46, together with interest . . . less any payments made by [d]efendants and collected by [p]laintiff under the terms of [the] [s]tipulation." *Id.* The defendants "failed to make the first scheduled payment in a

timely manner" and the plaintiff provided notice. *Id.* The defendants had seven days to cure but made their payment on "the eighth or ninth day" after default. *Id.* The Appellate Division held that pursuant to the stipulation, judgment was appropriately entered in the amount of $30,395.27, which included the sum of $56,774.46, plus interest and costs, and less any payments collected by plaintiff. *Id.* Thus, when the terms of a stipulation of settlement "clearly indicate[s] the date by which payment [is] to be made," the parties involved are bound to its provisions. *Baiting Hollow Acquisitions, LLC v. Estates of Baiting Hollow, Inc.*, 698 N.Y.S.2d 731, 731 (App. Div. 1999).

Although Appellant tendered payment of $1,200,000 on December 21, 2018, (R. 285–86), Appellee was not obliged to accept the amount in full satisfaction of the Judgment. Similar to *Cadlerock Joint Venture, L.P.*, 812 N.Y.S.2d at 470–71, because the payment was due on November 1, 2018, Appellant's delayed payment and unconditional tender on December 21, 2018, is insufficient under the terms of the contract, (*id.*), and Appellee had a right to refuse payment. The amount due after November 1, 2018, is $1,473,050.82 plus interest. (R. 118–19, 285–86); *see 4 B's Realty 1530 CR39, LLC v. Toscano*, 818 F. Supp. 2d 654, 659 (E.D.N.Y. 2011) (declining to reduce interest on a note where the defendant contended "that equitable considerations warrant the cessation of the calculation of interest" from the date he tendered payment because the plaintiff was justified in refusing the tender, which was not a valid satisfaction of the defendant's debt); *MBR Contracting, Inc. v. Atakhanian*, 25 N.Y.S.3d 287, 288–89 (App. Div. 2016) (noting that even though the defendants made payments totaling $6,000 less than two weeks after the stipulated due date, the defendants did not comply with the terms of the stipulation, which were negotiated by counsel, because the stipulation stated that the plaintiff "was to receive $10,000 from the defendants in five monthly installment payments of

$2,000 each" and that if the defendants failed to make timely payments, judgment would be entered against them in the amount of $50,508.06); *Suffolk Anesthesiology Assocs., P.C v. Verdone*, 22 N.Y.S.3d 511, 513 (App. Div. 2015) (noting that the plaintiff failed to make "an unconditional tender equivalent to the damages due"); *McKenzie v. Vintage Hallmark, PLC.*, 755 N.Y.S.2d 288, 288–89 (App. Div. 2003) (declining to justify vacating a stipulation where the defendants failed to pay fees owed within thirty days and did not timely cure on written notice even though the plaintiff received defendants' payment same day it entered judgment); *Trustco Bank N.Y. v. Drake*, 599 N.Y.S.2d 763, 763 (App. Div. 1993) (noting that although the defendant mailed the required payment ten days after the due date stated in the forbearance agreement and the plaintiff refused to accept the payment, the plaintiff was entitled to proceed with foreclosure).

Thus, Appellant's tender of $1,200,000 on December 21, 2018, was not an unconditional tender and therefore did not stop the accrual of interest after December 21, 2018.

### 3. Equity and fairness principles

Appellant argues that Appellee's failure to expedite the foreclosure process goes against "equity and fairness" principles and that "the existence of post-judgment equitable defenses in favor of Appellant preclude[] Appellee from recovering the full amount of the Judgment." (Appellant Br. 6, 16.) Appellant asserts that it should not be responsible for interest accruing after December 21, 2018, because Appellee "'sat on' its rights while permitting interest to accrue against the equity in the Property at the rate of [twenty-four] per annum on the full principal balance." (*Id.* at 16.)

Appellee contends that the "delays in the foreclosure process were caused by [Appellant's] request for forbearance and the automatic stay triggered by its bankruptcy filing." (Appellee Br. 19.)

Foreclosure actions are equitable in nature, which means that "the recovery of interest is within the court's discretion." *Bank of N.Y. Mellon v. George*, 127 N.Y.S.3d 310, 312 (2020) (quoting *BAC Home Loans Servicing, L.P. v. Jackson,* 74 N.Y.S.3d 59, 59 (App. Div. 2018)); *see also* N.Y. C.P.L.R. 5001(a) (providing that "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion"); *U.S. Bank Nat. Ass'n v. Thomas*, 977 N.Y.S.2d 670, 670 (Sup. Ct. 2013) (citing cases to show that the court has discretion to award interest in foreclosure proceedings). "[U]nder certain circumstances, it is appropriate for a court to refrain from enforcing the contractual language of a mortgage document and exercise its discretion to effectuate a different result." *Heavey v. Prompt Mortg. Providers of N. Am., LLC (In re Heavey)*, 608 B.R. 341, 351 (Bankr. E.D.N.Y. 2019). Equity may require "the cancellation of any interest awarded on the unpaid principal balance of the mortgage." *U.S. Bank Nat. Ass'n*, 977 N.Y.S.2d at 670 (citing *Norwest Bank Minn., NA v. E.M.V. Realty Corp.*, 943 N.Y.S.2d 113 (App. Div. 2012)); *see also id.* (concluding that the cancellation of interest on the principal balance of a mortgage was appropriate where "the lack of good faith of plaintiff's servicer resulted in the accumulation of interest during the protracted period of settlement negotiations"); *Bank of N.Y. Mellon*, 127 N.Y.S.3d at 312 (declining to reduce interest where there was no wrongdoing or lengthy unexplained delay). Wrongful conduct or undue delay by a plaintiff may require the cancellation of interest. *See Deutsche Bank Tr. Co., Americas v. Stathakis*, 935 N.Y.S.2d 651, 653 (App. Div. 2011) (noting that equity required canceling interest accrued following the plaintiff's erroneous filing of satisfaction, which caused significant delay); *Dayan v. York*, 859 N.Y.S.2d 673, 674–75 (App. Div. 2008) (cancelling accrued interest where an action was commenced in 1994 and the plaintiff did not seek a judgment of foreclosure until 2001); *In re Feldman*, 309 B.R. 422, 426 (Bankr. E.D.N.Y.

2004) (noting an unfair delay where three "petitions [were] filed within days of a scheduled foreclosure with the apparent intention of delaying the foreclosure").

The delay in the foreclosure process does not undermine equity and fairness principles. Appellant requested forbearance, which prevented a foreclosure sale prior to November 1, 2018, (R. 116–25), and Appellant's bankruptcy filing on January 21, 2019, triggered an automatic stay, which Appellee sought to lift, (R. 22–23). The foreclosure process has been delayed as a result of the ongoing litigation and through no fault of Appellee. *See People's United Bank v. Patio Gardens III, LLC*, 135 N.Y.S.3d 271, 271–72 (App. Div. 2020) (declining to cancel interest where "the complained-of delay in obtaining an amended judgment of foreclosure," which was partly due to a stay of the action, could not "be solely attributable to the plaintiff, and . . . the complained-of conduct of the plaintiff . . . was not so egregious as to merit the imposition of sanctions against it in the form of limiting the interest awarded" (citing *Prompt Mortg. Providers of N. Am., LLC v. Zarour*, 64 N.Y.S.3d 106, 106 (App. Div. 2017))); *HSBC USA v. Lugo*, 9 N.Y.S.3d 6, 8 (App. Div. 2015) (concluding that the plaintiff failed to show that the relatively short delay "which was undisputedly mostly attributable to ongoing settlement negotiations, caused it to change its position or to suffer any similar prejudice"); *Meadowlands Portfolio, LLC v. Manton*, 988 N.Y.S.2d 782, 784 (App. Div. 2014) (concluding that the lower court "did not abuse its discretion in awarding plaintiff the sum of $10,000 in attorney's fees, rather than the sum of $41,042" where "the matter was pending for over [ten] years, and much of the delay was attributable to plaintiff").

Accordingly, the Court declines to cancel the payment of accrued interest based on equity and fairness principles.

For the reasons set forth above, the Court finds that Appellee provided adequate documentation to the Bankruptcy Court to sustain the Claim, that the lack of an evidentiary hearing does not constitute error, and that the Settlement Stipulation requires Appellant to pay the sum of $1,473,050.82 plus interest accrued, including interest accrued after December 21, 2018.

## III. Conclusion

For the foregoing reasons, the Court denies Appellant's appeal and affirms the Bankruptcy Court's ruling granting Appellee the sum of $1,473,050.82 plus interest accrued from November 1, 2017, through the date Appellee receives payment in full, at the default rate of twenty-four percent per annum.  The Clerk of Court is directed to enter judgment and close the case.

Dated: May 10, 2021
        Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge